JOSIAH C. ARMIGER. ET AL. *vs.* CHARLES L. REITZ ET AL.

*Rights of Creditors of Remainder-man Entitled to Property after a Life-estate—Execution—Receivers.*

Real and personal property was given by a will to testator's widow for life with remainder in one-third thereof to his son, Charles. The widow was put into possession of both realty and personalty. Charles was indebted to the testator's estate in a large sum secured by judgment. Other judgments were subsequently recovered against him. Certain attaching creditors of Charles filed a bill in equity asking for a sale of his interest in said estate, both real and personal, subject to the widow's life-estate, or clear thereof an allowance to be made to her therefor, the proceeds of sale to be applied to the payment of the debts of Charles, and for receiver, &c. *Held*, that a demurrer to the bill was properly sustained because the life-tenant is entitled to the possession of the property, both real and personal, and cannot be compelled to accept the estimated value of her interest in money in lieu of the use of the property, and because the plaintiff cannot compel a prior judgment creditor to submit to a sale of the property free from his lien; and that the plaintiffs are not entitled to a receiver of Charles' interests in the personalty, his indebtedness to the testator's estate being greatly in excess of his interest in such personalty.

The interest of a remainder-man in real estate during the preceding life-estate is liable to execution by a judgment creditor.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*George T. Mister* (with whom was *Beverly W. Mister* on the brief), for the appellant.

Personal property held in remainder cannot be reached by execution or attachment. "The necessity of seizure will prevent the attachment of a remainder in property of a personal character during the life for which it is held. The tenant for life cannot be disturbed in his possession, even by one holding a vested remainder, and this exclusive right of possession cannot be divested by the *creditors* of the remainder-man, who have no better right to the property than the debtor." 1 *Wade on Attachment*, sec. 264, page 502; *Drake on Attachment*, sec. 246a, page 233; 1 *Freeman on Execution*, sec. 122, 159a; *Goode* v. *Longmire*, 35 Ala. 668, 673, &c.; *Allen* v. *Scurry*, 1 Yerg. 36, 37.

The question, then, is, has equity jurisdiction over this property, which, simply because of the incompleteness of the legal remedy, cannot be reached at law? We will find that an estate in remainder in *chattels*—money, *choses in action*, etc., is an estate of purely *equitable growth*, and that the holder of the particular estate stands in the position of a *trustee for the remainder-man*. And, further, as the property in this case has been transferred to the life-tenant by the executors, when it should have been invested by them in such property, and in such a manner as would define the remainder-man's interest therein, the question of constructive *fraud* also arises. "It is laid down as an undeniable proposition, that the jurisdiction of a Court of Equity will be exercised when the principles of law by which the ordinary Courts are guided give a right; but the powers of those Courts are not sufficient to afford a complete remedy, or their modes of proceeding are inadequate to the purpose." *Hadden* v. *Spader*, 20 Johns, 563; *Jones* v. *Lansing*, 7 Paige, 586, 587.

In the case at bar the property bequeathed consisted of

money and property whose use is conversion into money (coupon bonds), and was given *generally*, and should, under the above authorities, been held and invested by the executors. 'It was therefore clearly the duty of the executors in this case, to invest the coupon bonds which formed the major portion of the personal estate, in such property and in such a way as would define and secure the *corpus* to the remainder-man. It could then have been reached by his creditors. 2 *Williams on Executors*; 700; *Perry on Trusts*, secs. 440, 547, 549; *Wootten* v. *Burch*, 2 Md. Ch. 190. The fact that this was the duty of the executors will not prevent a Court of Equity taking jurisdiction on application of the remainder-man to have his rights secured and protected. *Code*, Art. 16, sec. 81; *Bennett* v. *Rhodes*, 58 Md. 83; *Davis' Adm.* v. *Clabaugh*, 30 Md. 510; *Wood* v. *Fuller*, 61 Md. 459. Especially is this so as an executor is always considered a trustee of the personalty, holding on an express or declared trust. 1 *Perry on Trusts*, sec. 121; *Joyce* v. *Gunnels*, 2 Richardson Eq., 259, 268. And if the tenant for life is considered a trustee for the remainder-man even when he is entitled to hold, and has possession of the property bequeathed, *legally*, as shown above, equity will certainly in this case, where he has possession of the property *illegally*, regard him as a trustee.

In *Daniels* v. *Eldredge*, 125 Mass. 356, 359, real and personal property had been devised to trustees to pay a certain annuity to the life-tenant, but the trustees were to convey the estate with all accretions thereof, to the remainder-man in fee, upon his reaching the age of twenty-five years, or they might convey the same or any part thereof to him on arriving at the age of twenty-one years. The bill was filed after the remainder-man had reached the age of twenty-one but before he was twenty-five. The Court, after holding that this was a vested remainder, further say, "and is capable of being alienated by him, and of passing by assignment in insolvency or bankruptcy; and this bill may therefore be maintained to apply to the payment of his

debts, his interest in the property, real and personal, so held in trust."

*Gans & Haman* and *Vernon Cook*, for the appellees, submitted the cause on this brief.

*The appellants have a clear and perfect remedy at law.* They are at liberty to proceed with their attachments, to obtain final judgment of condemnation against the real estate attached, to sell all the right, title and interest of Charles L. Reitz therein, and to obtain for themselves the proceeds of such sale, or to buy in the property themselves, in which event they may either hold it subject to prior judgments, or by paying these judgments they may obtain it free from the same.

The appellants, however, are not satisfied with this remedy, but wish to interfere with the vested rights of prior lien holders. The appellee, Cranwell, is the holder of a judgment prior in point of time to the plaintiffs' attachments. No fraud is alleged. What right has a Court of Equity to appoint a receiver to take this property free from Cranwell's interest under this prior judgment? To do so would be most unjust to him. In case the property is sold by the receiver and does not bring enough to pay all lien claims, the only result would be that Cranwell would be compelled to pay the costs of the proceedings and the receivers' commissions out of funds which otherwise would have come to him. On the contrary, if there is any valuable equity in the property over and above the amount of the judgment liens, then the appellants can easily acquire this interest under their attachment proceedings. Under such circumstances a receiver will never be appointed. *Furlong* v. *Edwards*, 3 Md. 99; *Speights* v. *Peters*, 9 Gill, 472; *Williamson* v. *Wilson*, 1 Bland, 318, note on Receivers. A very similar question as to the rights of successive lien holders has been passed upon by the Court. *Morton* v. *Grafflin*, 68 Md. 560.

The appellants, however, contend that they have no

remedy at law. as against any personal property in which said Charles L. Reitz may have an interest under the will of Philip Reitz, deceased. Our answer to this is that Chas. L. Reitz has no interest in any personal property belonging to that estate. The Record shows of what the personal estate of Philip Reitz consisted, and further shows how the same has been distributed. From this exhibit it appears that the personal estate distributed consisted of two $1,000 bonds of the city of Anniston, Alabama, of no value, and two $1,000 bonds of the Southern Railway Company, appraised at $1,780, and in cash $13.43. All of this personal estate was distributed to Wilhelmina Reitz, widow, life-tenant, subject to the provisions of the will, with remainder as to a one-third interest therein to Charles L. Reitz, *subject to a judgment filed in the Superior Court of Baltimore City for $4,686.15 due Philip Reitz's estate.* It will be seen from this distribution that Charles L. Reitz has only a one-third interest in remainder in property worth about $2,111. Even if we disregard the life-estate, Charles L. Reitz's interest would at most be one-third of the above amount, *i. e.*, about $700, against which there is a set-off of $4,686.15, due by said Charles L. Reitz to the estate. Even if we assume that these bonds are undervalued in the administration account they must be shown to be worth six and one-half times as much as that valuation before it can be shown that Charles L. Reitz has any interest therein. Of course, it is impossible that a five per cent bond should be worth six times its par value. Hence it appears that there is no personal estate passing to Charles L. Reitz under that distribution, and that the appointment of a receiver would be merely a nugatory act. A Court of Equity will never pass an order or decree where it is manifest that such order or decree will be merely nugatory.

As to Cranwell, it is only necessary for the Court to hold that the plaintiffs have a remedy at law as to the real estate. He has no lien upon any supposed personal property. Even if the Court should find that there is personal property and

that a receiver should be appointed for same, nevertheless the demurrer should be sustained as to Cranwell. The reason that the defendant, Cranwell, takes the position which he holds in this case, is that the interest of Reitz in the real estate is increasing each day as the life-tenant grows older, hence, while in case of a sale at this time the proceeds might not be sufficient to pay him in full, yet upon the death of the life-tenant there will probably be even more than sufficient to satisfy all the judgment claims.

SCHMUCKER, J., delivered the opinion of the Court.

The appellants, who are attaching creditors of Charles L. Reitz, filed a bill in Circuit Court No. 2, of Baltimore City, asking to have his interest in remainder in his father's estate sold for the payment of their claims.

Two of the defendants, Charles L. Reitz and one of his creditors, holding a judgment against him antedating the issue of the appellants' attachments, demurred to the bill, and from the decree sustaining their demurrer this appeal was taken.

The material facts alleged in the bill, or appearing from the exhibits filed with it, are as follows: Philip Reitz died in January, 1898, leaving a will by which he gave his entire estate to his widow, Wilhelmina, for life or widowhood, with remainder in one-third thereof to his son, Charles L. Reitz. The estate consisted of real estate worth $16,000, two coupon bonds appraised at $1,780 and $331 in cash, making a total of $18,080 in value. The widow and the testator's brother, Lewis, were named in the will as executors. They qualified and, after paying the debts and funeral expenses, passed an account in the Orphans' Court by which they distributed the net personal estate, consisting of the two coupon bonds and a few dollars in cash, to the widow as life-tenant, subject to the provisions of the will, with remainder to the persons therein named. Of this remainder one undivided third was by the account distributed "to Charles L. Reitz, son of testator (*subject to a judg-*

*ment filed in the Superior Court for $4,686.15 due to Philip Reitz's estate.*)"

The judgment referred to in the account of the executors had been entered in their favor by confession against Charles L. Reitz on March 1, 1898, for a debt due by him to his father. He had also on the same day confessed a judgment in favor of Thomas G. Cranwell for $530.91, and on the following day a judgment was entered against him by default in favor of George W. Hunter for $923.45.

About two months after the entry of these judgments, amounting in the aggregate to $6,140.36, the appellants brought suits against Charles L. Reitz for debts, due to them respectively, amounting to $802.44, and, failing to reach him with process, they, on April 18th, 1899, caused attachments on two *non ests* to be issued and levied on his interest in the real estate left by his father and also to be laid in the hands of the executors of the latter's estate. The appellants, then, without procuring judgment of condemnation in their attachments, filed the bill in the present case. The bill does not aver that the attachments were laid in the hands of the executors before they made distribution of the personal estate, nor does the record show whether such was the fact.

The bill named as defendants the executors, one of whom is the life-tenant, and the judgment creditors, and it prays for a discovery of assets by the executors; for a sale of Charles L. Reitz's interest in his father's estate, real and personal, either subject to the widow's life-estate or clear of the life-estate, the value thereof in that event to be allowed to her, and the remaining proceeds of sale to be applied to the payment of his debts; and that if a sale be decreed, the plaintiffs might be preferred to the judgment creditors in the distribution of the proceeds of the personal estate; and for an injunction, a receiver and an account. None of the debts, on which the judgments above mentioned are founded, are assailed or impeached by the bill, nor is any fraud alleged against the defendants.

To this bill Charles L. Reitz and Thomas G. Cranwell, one of his judgment creditors demurred and the Court by the decree appealed from sustained the demurrer.

The question to be considered by us is whether the bill and exhibits on their face present a case entitling the appellants to relief against the two demurring defendants, who are the appellees.

The appellants clearly have an adequate remedy at law against the interest of Charles L. Reitz, in the *real estate* of which his father died seized. Although Charles will not be entitled to the possession or enjoyment of this interest until after the death or remarriage of his mother, his title to it is a vested one, and as such is liable to execution. The appellants had already attached it when they filed their bill in the present case. They can, if their claims are enforceable, pursue their attachments to final judgment and execution in the ordinary way without the aid of a Court of Equity.

The widow is entitled to the possession and enjoyment of the real property so long as her estate therein lasts and neither the devisee in remainder nor his creditors can compel her to submit to a present sale thereof or to accept in money the estimated value of her estate in lieu of the specific use of the property. Nor can the appellants, who have only the inchoate lien of their attachments, force the appellee, Cranwell, who is a senior encumbrancer with the perfected lien of a final judgment, to submit to a sale free of his lien. In *Morton* v. *Grafflin*, 68 Md. 560, this Court quoted with approval from *Adams on Equity*, the statement that the only remedy of a subsequent lien holder as against one who is paramount, is to redeem the prior lien and tack it to his debt, because the junior incumbrancer has no claim or equity against the paramount incumbrancer. That proposition is especially true of a case such as the present one where creditors, who have not acquired a perfected lien, seek to compel prior incumbrancers to submit to an immediate sale of an estate in remainder, which could only be made at a ruinous sacrifice.

The widow is also entitled to the possession and enjoyment of the *personal estate* during her life or widowhood, and the appellants cannot compel her to submit to a present sale of it or to a commutation of her interest therein. If the property, of which the personal estate is composed, was of such a character that the executors should have invested it under the direction of the Orphans' Court, instead of delivering it to the life-tenant, that tribunal was authorized by law to compel an investment by the executors upon the application of anyone having an interest in the remainder following the life-estate.

And even now, after the personalty has been delivered to the life-tenant, any persons interested in the remainder can, upon a proper bill filed for that purpose against the life-tenant, if they can make out a case of danger to their interest by reason of her possession of the property, compel her to give security for their protection. *Boyd* v. *Boyd*, 6 G. & J. 32; *Miller* v. *Williamson*, 5 Md. 233. There is, therefore, no reason for the appointment of a receiver of Charles L. Reitz's interest in either the real or personal estate.

Furthermore, the debt of Charles L. Reitz to his father's estate is so large that it does not appear that he will be entitled to receive any portion of the personal estate when the time comes to divide it between the remainder-men. That it is the right and duty of an executor or administrator to retain, from the share of a distributee or the interest of a legatee in the personal estate, the amount due by the latter to the decedent, was declared to have been for many years the settled law in Maryland in the case of *Gosnell*, *Trustee*, v. *Flack*, 76 Md. 426.

In *Smith* v. *Donnell*, 9 Gill, 87, a legatee in remainder was indebted to the testator in an amount greater than his share of the estate. The trustee in insolvency of the legatee, representing his creditors claimed, in the distribution of the estate in the Orphans' Court, to be awarded the legacy given by the will to his insolvent, because the latter had been absolved from his debt to the testator by his discharge

in insolvency.    Even under those circumstances the Court refused the claim of the trustee and held that the debt from the insolvent legatee must be set off against his share of the estate.    Upon an appeal the judgment was affirmed by our predecessors, who declared in their opinion that to have permitted the trustee to receive the share of his insolvent legatee would have been *" an act of flagrant injustice "* to the other parties, between whom and the insolvent the estate of the decedent was by the terms of his will to be equally divided.    The same proposition was upheld in a proceeding in equity in the case of *Devries, Trustee*, v. *Hiss*, 72 Md. 564-5, and it has been declared to be the law in many other States. *Koons, Admr.*, v. *Mellett*, 7 L. R. A. 231, and cases there cited.

In the present case the legatee, whose share of the estate the appellants seek to have sold for the payment of his debts, is indebted to the estate to an amount which not only greatly exceeds his share of the personal estate, but will, if his mother should survive for some years longer, be more than equal to his share of the entire estate, real and personal.

It follows from what we have said that the appellants are not entitled upon the face of their bill and exhibits, either to a sale of the interest of Charles L. Reitz in the property in question, for the purpose of distributing the proceeds among his creditors, or to the appointment of a receiver of his interest, and therefore the decree sustaining the demurrers must be affirmed.

As the executors and the life-tenant did not demur to the bill, the decree appealed from did not dismiss the bill as to them, and we do not pass upon the right of the appellants to maintain the bill against them for a discovery of assets, or, after perfecting their lien and properly amending the bill, to require the life-tenant to give security for the protection of the parties interested in the remainder, after her death, in the personalty delivered into her possession by the executors.

*Decree affirmed with costs.*

(Decided June 14th, 1900.)